KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
Joseph C. Corneau
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

-and-

RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Joseph L. Schwartz (pro hac vice admission pending)
Tara J. Schellhorn
Rachel F. Gillen (pro hac vice admission pending)
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey 07960
Telephone: (973) 538-0800
Facsimile: (973) 538-1984

Proposed Attorneys for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                                                              :
In re                                                         :      Chapter 11
                                                              :
COCOA SERVICES, L.L.C., et al.,[1]                            :
                                                              :
              Debtors.                                        :      Case No. 17-11936
                                                              :
                                                              :
                                                              :      Joint Administration Pending
                                                              :
------------------------------------------------------------- x

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL BY COCOA SERVICES LLC, (B) GRANTING ADEQUATE PROTECTION, (C) SCHEDULING A FINAL HEARING,  AND (D) GRANTING RELATED RELIEF

Cocoa Services, L.L.C. ("Cocoa Services") and Morgan Drive Associates, L.L.C.

("Morgan Drive"), the debtors and debtors-in-possession (each a "Debtor" and collectively, the

---

[1] The Debtors in these Bankruptcy Cases and the last four digits of their respective taxpayer identification number are as follows: Cocoa Services, L.L.C. (3769); Morgan Drive Associates, L.L.C. (2335). The Debtors' principal office is located at 400 Eagle Ct., Swedesboro, NJ 08085.

"Debtors") in the above-referenced chapter 11 cases (the "Bankruptcy Cases"), submit this Motion for entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "Interim Order"), and a final order (the "Final Order") (i) approving Cocoa Services' use of cash collateral, (ii) providing adequate protection, (iii) setting a final hearing (the "Final Hearing") pursuant to Fed. R. Bankr. P. 4001, and (iv) granting related relief (the "Motion").  In support of this Motion, the Debtors submit the *Declaration of Robert J. Frezza in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), submitted contemporaneously herewith, and respectfully states as follows:

## JURISDICTION, VENUE AND STATUTORY PREDICATE

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue of this proceeding and of this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

3.      The statutory predicates for the relief sought herein are sections 105, 361, 362, 363 and 507 of the United States Code, 11 U.S.C. §§ 101, et. seq. (the "Bankruptcy Code"), and Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule") 4001 and 9014.

## BACKGROUND

### A.      General Background

4.      On July 14, 2017 (the "Petition Date"), both of the Debtors filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Cases in the United States Bankruptcy Court for the Southern District of New York (the "Court").

5.      The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.  No trustee or examiner has been appointed in these cases.

6.      Cocoa Services operates a cocoa liquor and cocoa butter melting and deodorizing factory in Logan Township, Gloucester County, New Jersey.  Morgan Drive is a real estate holding company that owns the land and building in which Cocoa Services operates (the "Facility").

7.      The Debtors respectfully refer the Court and interested parties to the First Day Declaration for a detailed description of the Debtors' business and events leading to the commencement of the Bankruptcy Cases.

**B.      Bank of the West Secured Equipment Financing Agreement**

8.      On April 8, 2014, Cocoa Services entered into a Master Equipment Financing Agreement (as amended, restated, supplemented and/or otherwise modified from time to time, the "Equipment Financing Agreement," and together with all related loan and security documents, the "Prepetition Financing Documents") with Bank of the West ("BOW").  Pursuant to the Prepetition Financing Documents, BOW loaned Cocoa Services funds to acquire, among other things, certain machinery and equipment as set forth in the schedule incorporated as part of the Equipment Financing Agreement (the "Schedule") and for working capital and other purposes.

9.      As security for repayment of this loan, Cocoa Services granted BOW a  first-priority security interest in and lien upon certain of Cocoa Services' assets (the "Prepetition Lien"), as described in the Schedule, including all of Cocoa Services' equipment, machinery, tools, parts, inventory, fixtures, accounts, documents, general intangibles, contract rights, government payments, chattel paper, rents and income payment intangibles and obligations

arising now or hereafter thereunder and all proceeds of any of the foregoing and all products of, additions to, replacements of, and returns and repossession of such collateral and all accessories, accessions, parts and machinery and equipment now or hereafter affixed to such collateral, as further set forth in the Prepetition Financing Documents (collectively, the "Prepetition Collateral").[2]

10.     As of the Petition Date, Cocoa Services was current on its obligations to BOW.

11.     In connection with the Equipment Financing Agreement, BOW made an original loan advance in the amount of $7,342,834.42, and a subsequent loan advance in the amount of $185,000.00 to Cocoa Services.  Prior to the Petition Date, interest on the loan accrued at a rate of 30 day LIBOR plus 3.50%, set annually.  The current interest rate is 4.4861%.

12.     In connection with the Equipment Financing Agreement, Peter G. Johnson and Mary Johnson (collectively, the "Guarantors") executed a Continuing Guaranty dated as of April 8, 2014, pursuant to which the Guarantors promised to pay all obligations and liabilities of Cocoa Services to BOW, and granted BOW a security interest in certain property owned by the Guarantors in possession of or on deposit with BOW.

13.     As of the Petition Date, Cocoa Services owes BOW the approximate sum of $5,308,526.09 under the Equipment Financing Agreement and related loan documents.

## NEED FOR USE OF CASH COLLATERAL

11.     By this Motion, the Debtors seek the interim and final use of cash collateral for Cocoa Services to preserve Cocoa Services' assets in order to maintain and maximize value for the benefit of all parties-in-interest. The Debtors and BOW have been negotiating the terms of

---

[2] Morgan Drive is not obligated to BOW under the Prepetition Financing Documents, or otherwise, and BOW does not have a lien against any of Morgan Drive's assets.  Further, Morgan Drive does not seek use of cash collateral. For the avoidance of doubt, the proposed Replacement Liens (discussed herein) will not encumber any of Morgan Drive's assets.

use of cash collateral; however, as of the time of the filing of the Motion, the parties have not reached an agreement with respect to the Debtors' use of cash collateral.[3] Nonetheless, given the fact that the Debtors have executed an Asset Purchase Agreement, and expect to shortly file a motion to sell substantially all of their assets to the proposed stalking horse bidder, or another bidder that submits a higher or better offer for the Debtors' assets, which sale promises to pay BOW in full (all of which is discussed herein), the Debtors submit that BOW is adequately protected.

12.     The Debtors seek use of cash collateral in accordance with a cash collateral budget (the "Budget"), which is attached as **Exhibit 1** to the Interim Order.

13.     The Debtors have determined, in the exercise of their business judgment, that Cocoa Services requires the use of cash collateral.  Cocoa Services does not have sufficient unencumbered cash or other assets with which to continue to operate its business in chapter 11. Cocoa Services has an immediate need to use cash collateral to pay various parties in the ordinary course of business and/or as authorized by the Court.  These parties include, but are not limited to, employees, third party vendors, utilities, insurance companies and professionals who, in the judgment of the Debtors' management, which includes the Debtors' Chief Restructuring Officer, provide essential services needed to operate, maintain and insure Cocoa Services' assets. Payment of these expenses is critical to the preservation of the Debtors' business and asset value, and to maximize the value of the Debtors' estates in connection with a going concern sale.

14.     Certain of the Pre-Petition Collateral may constitute cash collateral pursuant to 11 U.S.C. § 363.  More specifically, BOW contends that it holds a security interest in, among other things, Cocoa Services' accounts receivable (and the proceeds thereof) and that these accounts

---

[3] In the event the parties reach an agreement prior to the first day hearing on the Motion, the Debtor will submit to the Court and file on the docket a copy of the proposed agreed interim order.

receivable (and the proceeds thereof) constitute cash collateral.  As a result, the Debtor's seek

authority to use cash collateral on the terms and conditions set forth in the Interim Order and in

accordance with the Budget.

### SUMMARY OF PRINCIPAL TERMS OF THE CASH COLLATERAL ORDER

15.    Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the following material

provisions are included in the Interim Order:[4]

> a)  <u>Entities with an Interest in Cash Collateral</u>: BOW (<u>see</u> Interim Order at ¶¶ C, D and F).
>
> b)  <u>Purpose of Use of Cash Collateral</u>: An immediate need exists for Cocoa Services to use cash collateral to continue to fund its business affairs so as to avoid immediate and irreparable harm to the estate and to estate assets, to pay wages, maintain business relationships with customers, vendors and suppliers, pay professionals and make adequate protection payments, in accordance with the Budget (<u>see</u> Interim Order at ¶¶ G and 1).
>
> c)  <u>Replacement Liens and Superpriority Administrative Expense Claim</u>: Solely to the extent of any diminution in value of its interest in the Prepetition Collateral, BOW shall receive Replacement Liens (as defined in the Interim Order) in post-petition property of Cocoa Services (<u>see</u> Interim Order at ¶ 2(a)) in the same nature, and to the same extent, validity and priority as the Prepetition Lien, and a superpriority administrative expense in Cocoa Services' bankruptcy case (as defined in the Interim Order) (<u>see</u> Interim Order at ¶ 2(b)).
>
> d)  <u>Other Protections Granted</u>: BOW is to receive, among other things: (i) certain reports and information from the Debtors (<u>see</u> Interim Order at ¶ 2(d)) and (ii) a requirement that Cocoa Services substantially comply with the Budget (<u>see</u> Interim Order at  ¶ 1).

### RELIEF REQUESTED

16.    The Debtors seek entry of the Interim Order and a Final Order granting the

following relief: (a) authorization for Cocoa Services to use cash collateral in accordance with

---

[4] This summary is qualified in its entirety by reference to the applicable provisions of the Interim Order (or Final Order). Any capitalized terms used but not otherwise defined in the summary shall have the respective meanings ascribed to such terms in the Interim Order.

the Budget; (b) granting adequate protection; (c) scheduling a final hearing (the "Final

Hearing"), pursuant to Bankruptcy Rule 4001(c)(2); and (d) granting related relief, as set forth in

detail in the Interim Order.

## BASIS FOR RELIEF

### CASH COLLATERAL AND ADEQUATE PROTECTION – THE GOVERNING LEGAL STANDARDS.

17.     The Bankruptcy Code defines "cash collateral" as:

> cash, negotiable instruments, documents of title, securities, deposit
> accounts, or other cash equivalents whenever acquired in which the
> estate and an entity other than the estate have an interest and
> includes the proceeds, products, offspring, rents, or profits of
> property and the fees, charges, accounts or other payments for the
> use or occupancy of rooms and other public facilities in hotels,
> motels, or other lodging properties subject to a security interest as
> provided in section 552(b) of this title, whether existing before or
> after the commencement of a case under this title.

11 U.S.C. § 363(a).

18.     Pursuant to section 363(c) of the Bankruptcy Code, a debtor-in-possession may

not use cash collateral without either the consent of the secured party or court approval.  See 11

U.S.C. § 363(c).

19.     Section 363(e) of the Bankruptcy Code provides that, upon request of an entity

that has an interest in property to be used by a debtor, the court shall "prohibit or condition such

use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

20.     The Debtors submit that they have satisfied the requirements of section 363(c)

and 363(e) of the Bankruptcy Code, and Cocoa Services should therefore be authorized to use

cash collateral.

21.     The Debtors submit that Cocoa Services' request to use cash collateral is also

warranted under section 105(a) of the Bankruptcy Code, which provides that "[t]he court may

issue any order, process, or judgment that is necessary or appropriate to carry out the provisions"

of the Bankruptcy Code.  11 U.S.C. § 105(a).

22.     Although "adequate protection" is not defined in the Bankruptcy Code, courts

generally describe it as "a balancing of the debtor's and a creditor's respective harm," see In re

Carson, 34 B.R. 502, 505 (Bankr. D. Kan. 1983) (citation omitted), and the legislative history of

section 361 of the Bankruptcy Code reflects congressional intent to give courts flexibility to

fashion adequate protection in light of the facts of each case and general equitable principles.

See In re 5-Leaf Cover Corp., 6 B.R. 463 466 (Bankr. S.D. W. Va. 1980).

23.     In addition, section 361 of the Bankruptcy Code sets forth three (3) non-

exclusive[5] methods of how an interest in property may be adequately protected, stating as

follows:

> When adequate protection is required under section 362, 363, or 364 of this title
> of an interest of an entity in property, such adequate protection may be provided
> by—
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to
> such entity, to the extent that the stay under section 362 of this title, use, sale, or
> lease under section 363 of this title, or any grant of a lien under section 364 of this
> title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that
> such stay, use, sale, lease, or grant results in a decrease in the value of such
> entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation
> allowable under section 503(b)(1) of this title as an administrative expense, as
> will result in the realization by such entity of the indubitable equivalent of such
> entity's interest in such property.

11 U.S.C. § 361.

---

[5] The adequate protection mechanisms enumerated by 11 U.S.C. § 361 are not exhaustive.  See In re
Miller, 734 F.2d 1396 (9th Cir. 1984); In re Family Place Partnership, 95 B.R. 166 (Bankr. E.D. Cal.
1989).

24.     The "interest" of a secured creditor that is entitled to be protected is the value of the secured creditor's allowed secured claim.   In other words, it is the amount of the secured creditor's claim up to the value of the collateral upon which the secured creditor has a lien as of the relevant valuation date.   See In re Shriver, 33 B.R. 176, 181 (Bankr. N.D. Ohio 1983); In re South Village, Inc., 25 B.R. 987, 994 (Bankr. D. Utah 1982).   The alleged secured creditor is only entitled to assurance that the value of its lien will not decrease as a result of the automatic stay and, if it does, that it will receive something as compensation for the decrease.   In re Ramco Well Service, Inc., 32 B.R. 525, 531 (Bankr. W.D. Okla. 1983).   Therefore, where the value of the collateral is not declining, a debtor need not do anything for the secured creditor as it is adequately protected.   Id.

25.     Furthermore, courts have held that the existence of an equity cushion can also provide adequate protection.   See In re Gallegos Research Group, Corp., 193 B.R. 577,584 (Bankr. D. Colo, 1995) (oversecured creditors may not be entitled to cash payments or post-petition liens because they are adequately protected through the existence of a value cushion).

26.     Here, the Debtors submit that BOW will be adequately protected during the pendency of the Bankruptcy Cases.

27.     First, as set forth in the First Day Declaration, the Debtors have executed an Asset Purchase Agreement ("APA") with JB Cocoa, Inc. for the purchase of substantially all of their assets.   Under the APA, JB Cocoa, Inc. has agreed to pay the Debtors a total of $8,000,000, subject to higher and better offers, of which $6,000,000 is allocated to Cocoa Services' assets. The Debtors will be filing a sale motion with the Court in connection with this offer very shortly. As of the Petition Date, Cocoa Services owes BOW the approximate sum of $5,308,526.09.   As a result, the Debtors submit that BOW is adequately protected by this equity cushion.

28.     Additionally, the Interim Order provides, *inter alia*, for further adequate protection in favor of BOW, in the form of valid, binding, enforceable, non-avoidable and automatically-perfected replacement liens against Cocoa Services' post-petition assets, with the same nature, extent, validity and priority of the Prepetition Liens in the Prepetition Collateral, to the extent of any diminution in value.

29.     Moreover, as is set forth in the Interim Order, as further adequate protection, BOW is to receive a superpriority administrative expense claim in Cocoa Services' case, pursuant to section 507(b) of the Bankruptcy Code.

30.     The Debtors submit that the proposed adequate protection being provided by Cocoa Services to BOW is fair and reasonable under the circumstances and satisfies the requirements of the Bankruptcy Code.

31.     Further, and very importantly, the preservation of the Debtors' business and operations on a going-concern basis will maintain the value of the Prepetition Collateral and allow for a sale to go forward.  In contrast, denial of the use of cash collateral to fund day-to-day operations will severely harm Cocoa Services at a critical time, effectively hindering its ability to maximize value through a sale of substantially all of the Debtors' assets.  Essentially, without the authority to use cash collateral, the Debtors cannot continue to operate.  See In re Acqa Assocs., 123 B.R. 192 (Bankr. E.D. Pa. 1991) ("The important question, in determination of whether the protection to a creditor's secured interest is adequate, is whether the interest, whatever it is, is being unjustifiably jeopardized.").

32.     For all of these reasons, the Debtors submit that Cocoa Services' use of cash collateral is warranted.

## INTERIM CASH COLLATERAL APPROVAL

33.     Fed. R. Bankr. P. 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than fourteen (14) days after service of such motion. The Court, however, may conduct an expedited hearing prior to the expiration of this fourteen-day period and authorize the interim use of cash collateral where, as here, such relief is necessary to avoid immediate and irreparable harm to a debtor's estate.

34.     For the reasons set forth above, the Debtors submit that failure to obtain approval for Cocoa Services' use of cash collateral on an expedited basis would lead to immediate and irreparable harm to the estate.   Accordingly, to maintain ongoing operations, the Debtors' urgently seek the entry of the Interim Order to prevent immediate and irreparable harm to the estate pending the Final Hearing, pursuant to Fed. R. Bankr. P. 4001(b), and authorize Cocoa Services to use cash collateral in accordance with the Approved Budget and the Interim Order.

## REQUEST FOR FINAL HEARING

35.     Pursuant to Fed. R. Bankr. 4001(b)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, and fix the time and date prior to the Final Hearing for parties to file objections, if any, to the Motion.

## NOTICE

36.     Notice of this Motion will be given to: (a) the Office of the U.S. Trustee, (Attn: Serene Nakano, Esq.); (b) the Internal Revenue Service; (c) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (d) Thompson & Knight LLP, counsel for BOW (Attn: Anthony F. Pirraglia, Esq.); and (e) all other parties required to receive notice pursuant to Bankruptcy Rule 4001 or requesting to receive notice prior to the date hereof (collectively, the "Notice Parties").   The Debtors submit that, under the circumstances, no other or further notice is required.

37.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[Remainder of page intentionally left blank]

## CONCLUSION

**WHEREFORE**, for the reasons set forth above, the Debtors respectfully requests that the Court (a) authorize Cocoa Services' use of Cash Collateral, on an interim, as well as final basis, (b) enter the Interim Order, substantially in the form attached hereto as **Exhibit 1**, granting the relief requested herein and, after the final Hearing, the Final Order, substantially in the form that shall be filed with the Court prior to the Final Hearing, and (c) such other and further relief as the Court may deem just and proper.

Dated:   New York, New York
       July 14, 2017

                     KLESTADT WINTERS JURELLER
                     SOUTHARD & STEVENS, LLP
By:

                */s/ Tracy L. Klestadt*
                Tracy L. Klestadt
                Joseph C. Corneau
                200 West 41st Street, 17th Floor
                New York, New York 10036
                Tel: (212) 972-3000
                Fax: (212) 972-2245
                Email: tklestadt@klestadt.com
                      jcorneau@klestadt.com

                  -and-

                RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
                Joseph L. Schwartz (*pro hac vice* admission pending)
                Tara J. Schellhorn
                  Rachel F. Gillen (*pro hac vice* admission pending)
                Headquarters Plaza, One Speedwell Avenue
                Morristown, New Jersey 07960
                Telephone: (973) 538-0800
                Facsimile: (973) 538-1984
                *Proposed Attorneys for the Debtors and Debtors-in-Possession*

4853358v11

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- x
                        :
In re:                       : Chapter 11
                        :
                        :
COCOA SERVICES, L.L.C., et al.,[1]   : Case No. 17-11936
                        :
                        :
           Debtors.    : Joint Administration Pending
--------------------------------------------------------- :

## INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363 AND RULES 4001(b), 4001(d) AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING USE OF CASH COLLATERAL BY COCOA SERVICES, L.L.C, (II) PROVIDING ADEQUATE PROTECTION THEREOF AND (III) SCHEDULING A FINAL HEARING

Upon the motion of Cocoa Services, L.L.C. ("Cocoa Services") and Morgan Drive Associates, L.L.C. ("Morgan Drive"), the debtors and debtors in possession (each a "Debtor" and together the "Debtors") in the above-referenced bankruptcy cases (the "Bankruptcy Cases") for entry of interim and final orders pursuant to sections 105, 361, 362, 363 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), Rules 4001(b) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") (a) authorizing Cocoa Services' use of Cash Collateral (defined below) of Bank of the West ("BOW"), (b) providing adequate protection thereof and (c) scheduling a final hearing (the "Interim Order"); and the Court having considered the Motion, the Declaration of Robert F. Frezza  in Support of the Debtors' Chapter 11 Petitions and First Day Motions, the exhibits attached thereto, and the evidence and arguments submitted at the interim hearing held on July

---

[1] The Debtors in these Bankruptcy Cases and the last four digits of their respective taxpayer identification number are as follows: Cocoa Services, L.L.C. (3769); Morgan Drive Associates, L.L.C. (2335). The Debtors' principal office is located at 400 Eagle Ct., Swedesboro, NJ 08085.

18, 2017 (the "Interim Hearing"); and adequate notice of the Interim Hearing having been provided in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors and their estates; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.     *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2), and both the Debtors and BOW consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgements in connection with the Motion consistent with Article III of the United States Constitution.  The statutory predicates for the relief sought herein are sections 361, 362 and 363 of the Bankruptcy Code, Bankruptcy Rules 4001(b), 4001(d) and 9014 and Local Rule 4001-2.  Venue for the Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     *Commencement of Case*.  On July 14, 2017 (the "Petition Date"), the Debtors each filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the United

States Bankruptcy Court for the Southern District of New York (the "Court") commencing the Bankruptcy Cases. The Debtors are continuing in the management and operation of their business and property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Case. As of the date hereof, the United States Trustee (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in this Case (any such committee, the "Creditors' Committee").

C.    *The Bank of the West*. Cocoa Services and BOW are parties to that certain Master Equipment Financing Agreement, dated as of April 8, 2014 (as amended, restated, supplemented and/or otherwise modified from time to time, the "Equipment Financing Agreement," and together with all related loan and security documents, the "Prepetition Loan Documents"). As of the Petition Date, the principal amount outstanding under the Equipment Financing Agreement was approximately $5,308,526.09 (collectively, together with any amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Loan Documents, plus (without limitation) accrued and unpaid interest, any fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses and disbursements), indemnification obligations, and other charges or amounts of whatever nature, whether or not contingent, whenever arising, as provided in the Prepetition Loan Documents, the "Prepetition Obligations") to the extent allowable under 11 U.S.C. § 506.

D.    *Prepetition Collateral*. The Debtor presently asserts that as set forth in the Prepetition Loan Documents, prior to the Petition Date, Cocoa Services granted to BOW security interests in and liens on (collectively, the "Prepetition Liens") the Prepetition Collateral (as defined in the Motion).

E.    *Cash Collateral.* For purposes of this Interim Order, cash collateral

3

consists of all Cocoa Services' property that constitutes cash collateral in which BOW has an

interest as provided in Section 363(a) of the Bankruptcy Code.  Accordingly, "Cash Collateral"

shall mean all cash, cash equivalents, negotiable instruments, refunds, documents of title,

securities, deposit accounts or other cash equivalents, in which BOW has an interest as provided

in section 363(a) of the Bankruptcy Code.  "Cash Collateral" shall also consist of all of Cocoa

Services' property that constitutes cash collateral in which Cocoa Services has an interest as

provided in section 363(a) of the Bankruptcy Code and shall include, without limitation:

> (1)   All cash proceeds from the collection, sale, lease or other disposition used or conversion of any property upon which BOW holds liens or replacement liens, whether as a part of the Prepetition Collateral or pursuant to the Bankruptcy Code, and order of this Court, applicable law or otherwise and whether such property has been converted to cash or existed as of the Petition Date;

> (2)   all of the respective deposits and refund claims of Cocoa Services upon which BOW has liens or replacement liens, whether as part of the Prepetition Collateral or pursuant to the Bankruptcy Code, and order of this Court or applicable law or otherwise and Cocoa Services' cash on hand as of the Petition Date; and

> (3)   all Postpetition accounts, accounts receivable, and cash proceeds generated by the Prepetition Collateral.

F.     *Need for Use of Cash Collateral*.  An immediate and critical need exists

for the Debtors to use Cash Collateral.  Cocoa Services does not have sufficient unencumbered

cash or other assets with which to continue to operate its business in chapter 11.  The Debtors

require immediate authority to use Cash Collateral as defined herein in order to continue the

business operations and facilitate their objectives in the Bankruptcy Cases.  Cocoa Services' use

of cash collateral to the extent and on the terms and conditions set forth herein is necessary to

avoid immediate and irreparable harm to its estate pending a final hearing.

G.     *Purpose*.  Cocoa Services seeks authorization to use Cash Collateral to

meet its ordinary cash needs and for such other purposes for the payment of actual expenses to

(a) maintain and preserve the assets and (b) continue operation of the business, including but not limited to payment for utilities, payroll, payroll taxes, and insurance expenses as reflected in the Budget (as defined below).

        H.      *Final Hearing*.  At the Final Hearing, the Debtors will seek final approval of the relief requested in the Motion for the proposed use of Cash Collateral arrangements on a final basis pursuant to a final order (the "Final Order"), notice of which Final Hearing will provided in accordance with this Interim Order.

        I.      *Notice.*  Notice of the Interim Hearing on the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier and/or hand delivery, to certain parties in interest, including: (i) the U.S. Trustee; (ii) the Internal Revenue Service; (iii) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (v) counsel to BOW; and (vi) all other parties required to receive notice pursuant to Bankruptcy Rule 4001 or requesting to receive notice prior to the date hereof.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order and no further notice need be given.

        J.      *Entry of Interim Order*.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  The permission granted herein to use the Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors and their estates.  The Court concludes that immediate entry of this Interim Order is in the best interests of the Debtors and their estate.

        Based upon the foregoing findings and conclusions, the Motion and the record made before this Court, and good and sufficient cause appearing therefor:

IT IS HEREBY ORDERED that:

1.     <u>Authorization to Use Cash Collateral</u>.   The Motion is granted on an interim basis on the terms set forth herein.   Subject to the terms and conditions of this Interim Order, Cocoa Services is authorized on an interim basis for the periods and in accordance with the Cash Collateral Budget (the "<u>Budget</u>") annexed as **<u>Exhibit 1</u>** (as may be amended from time to time), to use cash collateral for the following purposes: (a) maintenance and preservation of its assets; (b) the continued operation of its business, including but not limited to utility expenses and insurance costs; (c) any United States Trustee Fees due under 28 U.S.C. § 1930; and (d) payment of professional fees to the extent allowed by the Court.

2.     <u>Adequate Protection</u>.   Pursuant to 11 U.S.C. §§ 361 and 363(e), as adequate protection of the interests of the BOW in the Prepetition Collateral (including the Cash Collateral) to the extent of any diminution in value from and after the Petition Date resulting from, among other things, the use, sale or lease by Cocoa Services (or other decline in value) of the Prepetition Collateral (including Cash Collateral), and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the "<u>Diminution in Value</u>"), BOW is hereby granted following: (a)  Replacement Liens (as defined below), and (b) Superpriority Claim (as defined below) (collectively, "<u>Adequate Protection</u>") as set forth herein:

a.     <u>Replacement Liens</u>.  Solely to the extent of any Diminution in Value, pursuant to 11 U.S.C. §§ 361 and 363, BOW is hereby granted valid, automatically perfected and enforceable additional adequate protection replacement liens (the "<u>Replacement Liens</u>") upon any and all presently owned and hereafter acquired personal property, real property and all other assets of Cocoa Services, wherever located, including, without limitation, all Prepetition Collateral, all rights, claims and causes of action, and together with any proceeds, recoveries, product, offspring or profits thereof (excluding any Chapter 5 causes of actions and proceeds arising thereunder) (collectively, the "<u>Collateral</u>"), <u>provided</u>, <u>however</u>, that the Replacement Liens shall be senior to any other liens included,

6

without limitation, any other adequate protection replacement liens.

b.      Superpriority Claim.  To the extent the adequate protection provided for hereby proves insufficient to protect BOW's interests in and to the Cash Collateral, BOW shall have a superpriority administrative expense claim in the case of Cocoa Services, pursuant to 11 U.S.C. § 507(b), senior to any and all claims against Cocoa Services under 11 U.S.C. § 507(a), whether in this proceeding or in any superseding proceeding.

c.      Reporting/Accounting.  The Debtors shall:

(i)      by the Friday of the week following the end of each week, provide a weekly report reflecting in reasonable detail the Debtors' actual cash inflows and outflows for such week as compared against the Budget, the amount and percentage, and an explanation of any significant variance of actual cash inflows and outflows for each line item set forth in the Budget, the names of each payee and a short description of the amounts paid to, and the goods or services provided by, each such payee during such week, the identity of each account debtor or other source of funds who has remitted payment during such week and the amount thereof, separate listing of the outstanding accounts receivable as of the prior week's close of business, and such other detail and information as may reasonably be requested by BOW;

(ii)     within three (3) business days after the end of each week, provide a report in form and substance showing the amount (bank balances) of cash outstanding in each of the Debtors' accounts, accounts receivable collections and other receipts, and disbursements, and a summary of the Debtor's accounts receivable; and

(iii)    concurrently with the delivery thereof to the U.S. Trustee, provide any operating reports or other reports regarding the Debtors' operations, financial position or business.

d.      Default Hearing.  In the event the Debtors default or violate this Order, BOW is entitled to request a hearing within fourteen (14) days (or if immediate and irreparable injury, loss or damage may occur, an emergency hearing within 48 hours).  For purposes of this Interim Order, however, the Debtors shall not be deemed to be in default for any deviation from the Budget provided that such deviation is the greater of twenty-five percent (25%) or $30,000 of the budgeted disbursements on a cumulative basis with regard to

any specified budgeted line item.

3.     <u>Scheduling of Final Hearing</u>.  The Final Hearing to consider entry of the Final Order is scheduled for _____  __, _____ at __:00 a.m./p.m. before the Honorable James L. Garrity, United States Bankruptcy Judge, on the 6th floor, in Courtroom 601, at the United States Bankruptcy Court for the Southern District of New York. On or before _____  __, _____, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with copies of this Interim Order and the Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for any Creditors' Committee, if appointed by such date; and (d) any other party to whom notice is required to be given pursuant to Bankruptcy Rules 2002 and 4001 and the Local Rules. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order must file written objections with the Clerk of the Court on or before _____  __, _____ at 4:00 p.m. (Eastern Time) and must serve such objections so that they are received on or before such date by: (i) counsel to the Debtor, attn: Joseph L. Schwartz, Esq., Riker, Danzig, Scherer, Hyland & Perretti LLP, Headquarters Plaza, One Speedwell Avenue, Morristown, New Jersey 07962; (ii) counsel to any Creditors' Committee, if appointed by such date; (iii) counsel to BOW, attn: Anthony F. Pirraglia, Thompson & Knight LLP, 333 Clay St., Suite 3300, Houston, TX 77002; and (v); the Office of the United States Trustee for the Southern District of New York, attn: Serene Nakano, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014.

4.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: New York, New York
           July __, 2017

_____
UNITED STATES BANKRUPTCY JUDGE

4863065v3

**Cocoa Services LLC & Morgan Drive 17-11936-jlg**
**Projected Weekly Cash Flow Budget**
As of July 10, 2017

| | | | | August | | | | | September | | | | October | TOTAL 13 Weeks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Monday | 10-Jul-17 | 17-Jul-17 | 24-Jul-17 | 31-Jul-17 | 7-Aug-17 | 14-Aug-17 | 21-Aug-17 | 28-Aug-17 | 4-Sep-17 | 11-Sep-17 | 18-Sep-17 | 25-Sep-17 | 2-Oct-17 | 10-Jul-17 |
| Friday | 14-Jul-17 | 21-Jul-17 | 28-Jul-17 | 4-Aug-17 | 11-Aug-17 | 18-Aug-17 | 25-Aug-17 | 1-Sep-17 | 8-Sep-17 | 15-Sep-17 | 22-Sep-17 | 29-Sep-17 | 6-Oct-17 | 6-Oct-17 |
| Key Dates (Estimated) | Filing week | | | | | | | | Auction | | Closing | | | |
| Week of Case | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
| | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected |
| **Opening Cash Balance** | $ 343.735 | $ 215.086 | $ 180.446 | $ 65.118 | $ 78.947 | $ 94.632 | $ 111.675 | $ 15.609 | $ 8.276 | $ 23.960 | $ 31.003 | $ 2.749.211 | $ 2.481.668 | $ 343.735 |
| **Cash Receipts** | | | | | | | | | | | | | | |
| Accounts Receivables | 105.485 | 80.450 | 105.951 | 126.592 | 97.096 | 97.096 | 97.096 | 108.250 | 97.096 | 97.096 | 97.096 | 97.096 | 97.096 | 1.303.496 |
| Other Receipts | - | - | 438 | 349 | 318 | 318 | 318 | 318 | 318 | 318 | 318 | 318 | 318 | 3.645 |
| Purchase Price Payment | - | - | - | - | - | - | - | - | - | - | 8.000.000 | - | - | 8.000.000 |
| **Total Cash Receipts** | $ 105.485 | $ 80.450 | $ 106.389 | $ 126.941 | $ 97.414 | $ 97.414 | $ 97.414 | $ 108.567 | $ 97.414 | $ 97.414 | $ 8.097.414 | $ 97.414 | $ 97.414 | $ 9.307.142 |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Salaries and Benefits | (38.430) | (46.326) | (49.800) | (45.800) | (45.800) | (45.800) | (49.800) | (45.800) | (45.800) | (45.800) | (45.800) | (53.800) | (45.800) | (604.557) |
| SG&A | - | (45.451) | (60.769) | (45.348) | (32.332) | (25.973) | (21.083) | (44.303) | (32.332) | (25.973) | (11.283) | (35.559) | (60.359) | (440.766) |
| Logistics | - | - | (17.457) | (1.661) | - | - | - | - | - | - | - | - | - | (19.118) |
| Tolling (Melting / Grinding) | (15.703) | (23.312) | (50.692) | (4.934) | (3.597) | (3.597) | (15.597) | (3.597) | (3.597) | (3.597) | (13.597) | (7.597) | (3.597) | (153.016) |
| Other Disbursements | - | - | - | (15.368) | - | - | - | - | - | - | - | - | - | (15.368) |
| **Total Operating Disbursements** | $ (54.134) | $ (115.089) | $ (178.718) | $ (113.111) | $ (81.729) | $ (75.370) | $ (86.480) | $ (93.701) | $ (81.729) | $ (75.370) | $ (70.680) | $ (96.957) | $ (109.756) | $ (1.232.826) |
| **TOTAL Operating Cash Flow** | $ 51.351 | $ (34.639) | $ (72.329) | $ 13.830 | $ 15.684 | $ 22.044 | $ 10.933 | $ 14.867 | $ 15.684 | $ 22.044 | $ 8.026.733 | $ 457 | $ (12.343) | $ 8.074.316 |
| **Other (Sources)/ Uses** | | | | | | | | | | | | | | |
| Debtors Professional Fees | (180.000) | - | - | - | - | (5.000) | (107.000) | - | - | (15.000) | - | (242.500) | - | (529.500) |
| Restructuring Expenses | - | - | (43.000) | - | - | - | - | (22.200) | - | - | - | (25.500) | - | (110.700) |
| **Total Other (Sources)/ Uses** | $ (180.000) | $ - | $ (43.000) | $ - | $ - | $ (5.000) | $ (107.000) | $ (22.200) | $ - | $ (15.000) | $ - | $ (268.000) | $ - | $ (640.200) |
| **TOTAL Net Cash Flow** | $ (128.649) | $ (34.639) | $ (115.329) | $ 13.830 | $ 15.684 | $ 17.044 | $ (96.067) | $ (7.333) | $ 15.684 | $ 7.044 | $ 8.026.733 | $ (267.543) | $ (12.343) | $ 7.434.116 |
| **Ending Cash Balance before Disbursements** | $ 215.086 | $ 180.446 | $ 65.118 | $ 78.947 | $ 94.632 | $ 111.675 | $ 15.609 | $ 8.276 | $ 23.960 | $ 31.003 | $ 8.057.737 | $ 2.481.668 | $ 2.469.325 | $ 7.777.851 |
| **Disbursements of the Waterfall** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ (5.308.526) | $ - | $ - | $ (5.308.526) |
| Proceeds Disbursements Cocoa Services LLC | | | | | | | | | | | (5.308.526) | | | (5.308.526) |
| Proceeds Disbursements Morgan Drive | | | | | | | | | | | - | | | - |
| **Ending Cash Balance after Disbursements** | $ 215.086 | $ 180.446 | $ 65.118 | $ 78.947 | $ 94.632 | $ 111.675 | $ 15.609 | $ 8.276 | $ 23.960 | $ 31.003 | $ 2.749.211 | $ 2.481.668 | $ 2.469.325 | $ 2.469.325 |